MAMIE E. WILLIAMS, HELEN W. MEDLIN AND HUSBAND, DURWOOD
P. MEDLIN, F. WEBB WILLIAMS, AND DAN E. WILLIAMS AND WIFE,
LILLIAN T. WILLIAMS, v. CHARLES M. TRAMMELL AND CHARLES
M. TRAMMELL, JR.

(Filed 21 September, 1949.)

**1. Judgments § 17a—**

While formal recitals in a judgment are not required by statute they
are, nevertheless, not improper and are not to be regarded as unimportant.

**2. Judgments § 18—**

In determining whether jurisdiction is acquired by the court rendering
a judgment, the entire record is to be considered, and jurisdictional re-
citals in the judgment will not prevail over recitals in other parts of the
judgment roll establishing facts to the contrary. G.S. 1-232.

**3. Judgments § 25—**

Fatal defect in service of process which renders a judgment absolutely
void must appear positively on the face of the record and not by evidence
*aliunde* in order for the judgment to be subject to collateral attack on
that ground.

**4. Judgments § 18—**

The judgment roll in a tax foreclosure suit contained one summons with
endorsement thereon showing personal service on the president of the
defendant corporation and another summons of precisely similar form and
import with defective affidavit upon which service by publication was had.
The judgment recited service by publication. *Held:* It appearing from
the judgment roll that valid service on the corporation was had by per-

sonal service on its president, the judgment roll establishes jurisdiction notwithstanding the subsequent attempt of service by publication or the recital thereof in the judgment, and such judgment is not subject to collateral attack in an action to remove cloud on title.

DEFENDANTS' appeal from *Morris, J.,* at May Term, 1949, of DARE.

This action was brought to remove a cloud from the title to the lands described in the complaint, of which plaintiffs claim to be owners. Answering, the defendants affirm their claim of ownership, denying plaintiffs' title and interest.

Since defendants claim title through a deed executed by Martin Kellogg, Jr., Commissioner, in a tax foreclosure suit entitled "Dare County, Plaintiff, *v.* Seligman, Williams & Ball, Inc., *et als.,* Defendants," for nonpayment of taxes on the lands described, and by *mesne* conveyance, and no attack is made upon the defendants' title except with respect to the validity of service in the foreclosure suit, and hence validity of the Commissioner's deed and effectiveness to divest defendants in that case, (and present plaintiffs), of their title to the property, appropriate stipulations were made by the parties controlling the "method of trial" and confining the investigation to the matter of service of summons in the foreclosure suit and the effect of the recital in the judgment with respect thereto.

The cause was submitted to Judge Chester Morris, on stipulation, facts and evidence taken on the trial, jury having been waived by consent.

In view of the narrowed scope of the controversy, the necessities of review do not require a comprehensive resumé of the evidence, including deeds and other matters not directly bearing on the question of service and the recital with respect thereto in the judgment, and these are omitted.

These facts, however, appear:

Seligman, Williams & Ball, Inc., was a North Carolina corporation with the principal place of business in Pasquotank County, in said State; the entire record in the foreclosure suit, including the Judgment Roll, was put in evidence; in this judgment roll is a summons dated November 27, 1935, and another, of precisely similar form and import, dated December 14, 1935, commanding service upon Seligman, Williams & Ball, Inc., F. Webb Williams, President, L. S. Gordon, the defendants above named; (only the part of this summons significant to the issue is quoted). On this summons is endorsed:

"Received 12/18/35; served 12/20/35 by delivering a copy of the within summons and a copy of the complaint to each of the following defendants: L. S. Gordon, F. Webb Williams, Pres. Seligman, Williams & Ball. Charles Carmine, Sheriff Pasquotank County."

Subsequently a defective affidavit of Melvin R. Daniels was filed, averring that summons had been returned by the sheriff with the endorsement: "After due diligence and search Seligman, Williams & Ball, Inc., cannot be found in Dare County," without further averment that an officer or agent of the corporation upon whom service of process could be made could not, after due diligence, be found in the State. Upon this affidavit service by publication was made, and the proceeding continued in course to judgment.

Upon the hearing the plaintiffs introduced the Judgment Roll in the tax proceeding referred to for the purpose of attack on the service of process and the ensuing judgment. The defendant also introduced practically all of the same Judgment Roll and various deeds and other matters.

At the conclusion of the plaintiffs' evidence the defendants demurred thereto and moved for judgment as of nonsuit, which was declined. At the conclusion of all the evidence the motion was renewed and again disallowed. Defendants took proper exceptions. Judge Morris rendered judgment that the tax proceeding was ineffective to divest title to the lands in dispute from the defendants therein and that the present plaintiffs were owners in fee, and defendants had no interest therein. Defendants appealed, assigning error.

*John H. Hall and McMullan & Aydlett for plaintiffs, appellees.*
*Martin Kellogg, Jr., and J. Henry LeRoy for defendants, appellants.*

SEAWELL, J. It is agreed between the parties that the plaintiffs' title to the disputed lands depends entirely on whether the tax foreclosure action brought by Dare County v. Seligman, Williams & Ball, Inc., is effective to divest title thereto from that corporation from whom they claim title by *mesne* succession; and this is narrowed to the contention that the judgment in that proceeding is void for want of valid service of summons on the corporation and, therefore, subject to collateral attack. The regularity of the proceeding in other respects is not challenged.

Plaintiffs introduced the Judgment Roll of the foreclosure suit for purpose of attack on the service of notice and the validity of the judgment. Defendants also introduced, item by item, practically all of the same Judgment Roll, including the above mentioned summons to the Sheriff of Pasquotank County and the return thereon of Carmine, Sheriff of Pasquotank County, containing endorsement of personal service on F. Webb Williams, President Seligman, Williams & Ball, and another named person.

The Judgment Roll contains, therefore, two summonses: One purporting by endorsement to have been personally served on the President of the

defendant corporation in the manner required by the statute, and another served by publication procured on a defective affidavit, which defective service and the recital in the judgment referring to it the plaintiffs contend completely vitiate any former notice and result in a void judgment.

We may concede, without the necessity of deciding, that the attempted service of summons by publication conferred no jurisdiction on the court; and if no other valid service appeared in the record, the judgment would be void and subject to collateral attack.

Also, it may be inferred from the recital of publication of summons in the judgment that the reference is to that attempted service by this method as appears in more detail in the record; and if no other service of summons appeared it would not be presumed, in this State at least, that another and better service was had, thus saving the judgment from collateral attack. Freeman on Judgments, 5th Ed., p. 812. We can go this far with the plaintiffs, although the expression is *obiter*. It can avail the plaintiffs nothing since the record, as we have seen, discloses that a valid service on the corporation was made by personal service on its president. G.S. 1-232.

In the instant case the defendants do not allege or attempt to prove that such service was not actually made on the corporation in this manner. They do contend that this service is in some way challenged by the recital in the judgment of service by publication, reference to which service proves it defective; and that the effectiveness of the personal service is thus destroyed,—by abandonment, or by some sort of legal necessity which confines the question of jurisdiction to the recital of service by publication, excluding the record of personal service.

While the formal recitals in a judgment are not improper, especially when judgment is taken by default, they are not required by our statute. The court here is one of general jurisdiction and the judgment is sufficiently supported by actual proof of service found elsewhere in the record. The Judgment Roll, the selected parts of the proceedings which the law sets apart and requires to be attached together and filed with the judgment as evidential support of the court's solemn decrees, is significant in its every part. We must look to the entire record to see whether jurisdiction is actually acquired, notwithstanding inadvertent, inaccurate or mistaken recitals in the judgment. Freeman on Judgments, 5th Ed., p. 811, sec. 381. If it has been so acquired in fact it is not repudiated or affected by a mere recital, nor will it lose its force, as supporting the decree, by reason of reference to another independent ineffective attempt at service. 49 C.J.S., "Judgments," sec. 71, and authorities cited; Freeman on Judgments, 5th Ed., p. 811; *Brickhouse v. Sutton,* 99 N.C. 103, 108, 5 S.E. 380.

It must not be inferred from these observations respecting jurisdictional recitals in a judgment that they are to be regarded as unimportant, even when not required by statute. We intend only to point out that the recitals are relative to other parts of the record, of equal or greater dignity, and to show the necessity of determining the question of validity of the service by examination of the whole record.

Indeed there is a long line of authority, to which North Carolina has contributed, to the effect that recitals of jurisdictional facts rendered by a court of general jurisdiction cannot be collaterally attacked. *McDonald v. Hoffman,* 153 N.C. 254, 69 S.E. 49; *American Cotton Oil Co. v. House,* 68 A.L.R., anno. at p. 385. Where there is only one service involved and the recital is totally contradicted by the record, the latter prevails. *Johnson v. Whilden,* 171 N.C. 153, 88 S.E. 223; *Ricaud v. Alderman,* 132 N.C. 62, 43 S.E. 543. This is but a repetition of the principle, still adhered to, that in order to let in collateral attack the fatal defect in the service, rendering the judgment absolutely void, must appear positively on the face of the record,—and not by evidence *aliunde. Smathers v. Sprouse,* 144 N.C. 637, 57 S.E. 392; *Simmons v. Box Co.,* 148 N.C. 344, 345, 62 S.E. 435, and cases cited.

It is unnecessary to point out again and with any greater emphasis that an examination of the whole record discloses valid service upon the corporation in the tax suit, and, therefore, it does not appear affirmatively on the face of the record that the corporation was not duly served with process. Considering, then, that the defective service by publication is thus by reference incorporated in the recital, the record containing the personal service is in contradiction with the recital and must control. *Powell v. Turpin,* 224 N.C. 67, 29 S.E. 2d 26.

Applying these principles to the case at bar, we conclude that actual jurisdiction was acquired by the court by the personal service of summons on the president of the corporation sued in the tax foreclosure proceeding under review, and that this jurisdiction was not affected by the subsequent independent attempt at service by publication, or in the recitals thereof in the judgment.

Defendants' motion for judgment of nonsuit should have prevailed. The judgment to the contrary is

Reversed.